Good morning, Your Honours. May it please the Court. My name is Marian Giano for Petitioner Soila Saavedra-Villanueva, and I'd like to introduce law student Kristen Eisworth, who will be presenting the argument today. Very well. Thank you for the introduction. Ms. Eisworth, we'll hear from you first. You may proceed. Good morning, and may it please the Court. My name is Kristen Eisworth, representing Petitioner Soila Saavedra-Villanueva. I will watch my time to reserve three minutes for rebuttal. This Court should grant the petition for review because a conviction under the Indiana statute is not a removable offense. That statute criminalizes creating a digitized image of sexual conduct by a child, which can be accomplished by taking a photo of an existing photo. The immigration judge rejected the government's charge that this offense was an aggravated felony relating to child pornography, and the government did not appeal that ruling. Instead, the government insists on contorting the Indiana statute into removal grounds that simply do not fit. Taking a photo of a photo without any involvement by a child or acts directed at a child is not sexual abuse of a minor or a crime of child abuse. On that basis, this Court should reverse. But even if this Court were to agree with the government on those removal grounds, it must still reverse and remand. The agency's analysis of the particularly serious crime bar is contrary to established agency precedent. Moving first to removal grounds, I will start with aggravated felony sexual abuse of a minor. This Court's decision in Winn v. Garland nearly resolves this case. In Winn, this Court held that simple possession of child pornography is not sexual abuse of a minor because it does not require an act directed at a minor. In the very same way, taking a photo of an already existing photo, which is the minimum conduct under the Indiana statute, does not require an act directed at a minor and therefore is not sexual abuse of a minor. And today this Court need not adopt a definitive generic definition of sexual abuse of a minor because the Indiana statute at issue here is overbroad as to all of them. The first possible definition of sexual abuse of a minor requires an element of sexual contact. The tools of statutory interpretation that this Court utilized in Winn v. Garland and that the U.S. Supreme Court utilized in Esquivel-Quintana indicate that such an element of contact is required. Those tools include contemporaneous dictionary definitions, analogous substantive federal criminal statutes, and state surveys. In this case, you're pronouncing it Winn, H-U-H, H-U-Y-N-H. Correct, Your Honor. Correct, Your Honor. You say that like possession of child pornography, production of this child pornography is not directed toward a minor? Yes, Your Honor. So the Indiana statute is the minimum conduct which the government agrees on is creation of a digitized image, which includes the taking of an already existing, the taking of a photo of an already existing photo. So under the Indiana statute, this creation. You're making a distinction between someone who takes a photo of the child and someone who takes a photo of an image that's already been created? You think that's? That is correct, Your Honor. And that is the minimum conduct that the government also identified. But why is that a significant distinction? Yes, Your Honor. So the reason that it's significant is because, one, the Indiana statute here does not require any act directed at a minor, meaning there's no communication with a minor, no presence of a minor, no coercion of a minor because, again, this is just taking a photo of a photo and therefore has no actual involvement of a minor or act directed at a child. What are you saying? Therefore, it cannot be abuse of the minor because the minor wasn't present? Yes. So this cannot be abuse of a minor because there is no child involved. There is no. . . The child whose image has been recreated and disseminated. The statute does not require dissemination, Your Honor, but in any case, the. . . Well, I just meant on the facts of this case, but I understand on your categorical approach you're saying it only had to be created, but there was a minor whose image was duplicated. The minimum, the elements under this statute do not require any dissemination or involvement of the minor, and so there is another part of the Indiana statute that is a dissemination statute, which this is not. In a similar way. . . Is the argument that Nguyen controls here or that the standard we, that we're bound by it on the facts of this case in the Indiana statute, or are you arguing that we should just apply the same standard in Nguyen? I believe that in Nguyen this Court identified that there would not, that it would not amount to sexual abuse of a minor if there is no act directed at a minor or act performed upon a minor. That might be another ground of removability, but it's not sexual abuse of a minor because in order to. . . But why isn't an act directed at a minor if one creates a new image of a minor? This is because it's a photo of a photo, so it's an act directed at a photo. There need not be any involvement with a minor under this minimum conduct, and that's the same minimum conduct that the government identified that Ms. Saavedra took, which is just the taking of a photo. No original involvement with the original creation of a photo. And the second possible definition of sexual abuse of a minor, which this Court has utilized in the sentencing context in United States v. Sonnenberg, requires that the perpetrator misuse or maltreat a minor for a purpose associated with sexual gratification. That definition was derived from looking at separate dictionary entries of sexual and abuse. But still here, even as to that definition, the Indiana statute would remain overbroad because the Indiana statute indisputably lacks an element of a purpose of sexual gratification. It lacks an element of the purpose of sexual gratification for any person, and we know this for multiple reasons. One is that the subsection of the Indiana statute at issue here, B-1, only requires the knowing creation of an image for any person. By contrast, another subsection, B-4, requires the knowing creation of an image with an intent to satisfy or arouse the sexual desires of any person. So we can see here that... Why do you say that intent to derive sexual gratification is an element of the generic offense? That is because, Your Honor, this Court has looked... utilized that definition of an element to gratify the desires of any person in the sentencing context, in the context of crimes relating to sexual abuse of a minor. And I believe when this Court did that in the United States v. Sonnenberg, it was looking at separate dictionary definitions of sexual and abuse to understand what the ordinary meaning of those terms was and what Congress understood in 1996 to mean by sexual abuse. And so that is one alternative way that this Court has looked at in the sentencing context, and other sister circuits have looked at this definition in the immigration context. But either way, the Indiana statute does not require either contact or a purpose of sexual gratification or an act towards a minor, such as under Wynne. Moving briefly to the crime of child abuse, this Court still need not adopt a specific definition of this ground because the Indiana statute is overbroad as to all grounds. Sister circuits... Explain the overbreadth. If we go with the Fourth and Fifth Circuits definition, how does Indiana not fall within that definition? Certainly, Your Honor. So those definitions require injury to a child or endangerment of a child, which is putting a child in a situation substantially likely to lead to injury. Here, the Indiana statute, which is just taking a photo of an already existing photo, does not require harm to a child. There is no element of harm. And there is no element of putting a child in danger because there need not be a child... Why isn't it per se harmful to the child? There is no element of harm to a child that a jury need find beyond a reasonable doubt because there need not be any acts towards a child, coercion or inducement of a child, for example. And so the... I believe the government relies on Osborne v. Ohio, which discusses general harms of child pornography in society. But that Supreme Court case was based on the idea of generalized harms. So I don't... Would child pornography, possession of pornography, fall within the Fourth Circuit's definition? No, Your Honor, because if a simple possession statute only requires a photo... How about the creation of, production, where you're charging only the photographer, the one who engaged with the child? I believe that then that could... If there was some element of inducement of a child, for example, our sister circuits have looked at those kinds of acts towards a child that induce a child, for example, into solicitation statutes, for example, inducing a child into sexual activity, which fulfills that endangerment requirement. Here, though, under the Indiana statute, under this B-1 section, there is no inducement of a child or endangerment element. Moving briefly to the particularly serious crime bar issue, the agency committed multiple legal and factual errors here, but I will focus on two, which are both failure to follow the agency's own precedent. First, the agency impermissibly strayed far beyond the facts that underlie the offense here, and second, the agency failed to analyze the key to the particularly serious crime determination, which is danger. But first I want to briefly frame the facts underlying the conviction here. Ms. LaVeidra discovered a sexually explicit photo of her 15-year-old niece in her father's phone. She took photo and video of this to alert her niece's mother, and that in whole constitutes the commission of the crime. But rather than focus on those facts, the agency relied on unrelated facts, such as that Ms. LaVeidra's father was later convicted for another crime, that Ms. LaVeidra was reportedly dishonest with police about how many letters she received from her father in jail, and that Ms. LaVeidra failed to report the photos of her niece to the police. But the agency's consideration of those punitive facts that do not underlie the commission of the offense and are indeed wholly unrelated and subsequent to the commission of the offense squarely violates the BIA's own precedent. In line with this, the BIA has repeatedly held that subsequent factors to the commission of the offense, such as cooperation with law enforcement, cannot be considered in the particularly serious crime determination. This was recently reaffirmed once again in a matter of RBE, which was published just a couple weeks ago, which held that cooperation with law enforcement cannot be considered in the particularly serious crime analysis. And in the same way... That is correct, Your Honor. The first two issues go to whether she's removable in the first place. That is correct, Your Honor. Yes, and so the agency's consideration of Ms. LaVeidra's lack of reporting to the police or lack of cooperation with law enforcement after the fact under the agency's own precedent cannot be considered in the particularly serious crime determination. I think the answer to this is no, but does the particularly serious crime bar apply to cat removal as well or not? Cat withholding, Your Honor. Cat withholding. Excuse me. Does it? It does. Okay. Yes. And second, just briefly, the board also committed independent reversible legal error by failing to consider dangerousness, which is the key to the particularly serious crime determination. This is part of the agency's precedent and reflects the statute, which says that a noncitizen will only be barred from withholding if having been convicted by a final judgment of a particularly serious crime they are a danger to the community of the United States. But here, the agency failed to consider dangerousness. It did not even mention the words danger or dangerousness in its briefing or in its decision, and the government's brief did not attempt to defend the agency's error. And that was independent legal error, which is an abuse of discretion that requires remand. And with that, I will reserve the rest of my time for rebuttal, Your Honors. You may. Thank you for your argument. Ms. Corliss, we'll hear from you. May it please the Court, Lindsay Corliss for the Respondent. This Court should deny the petitions for review. There are many issues that were briefed by the parties before this Court, but this Court's path to upholding these two orders does not need to be complicated. We have two separate independently dispositive grounds for her removability. There's the sexual abuse of a minor aggravated felony, and there's the crime of child abuse, child neglect, and child abandonment. You do not — this Court does not need to find on both. This Court does not need to define sexual abuse of a minor in order to find that she's removable on the other ground. So I'm going to start with the crime of child abuse, child neglect, or child abandonment. So the Board has consistently applied a definition since 2008. It's the matter of Velazquez-Herrera definition, and then supplemented by matter sorum. And what it essentially did was say we need this level of culpability, and they list out the level of culpability, intentional, knowing, reckless, or criminally — or criminally negligent. And then they say that there has to be an act or an omission that constitutes maltreatment of a child. It includes sexual — sexual exploitation, and that it has to be a child under age 18. Now, the majority of — of courts did defer to that prior to — prior to Loper-Bright. Post-Loper-Bright, we have two circuits who — we have three circuits who addressed it. The Eleventh Circuit recently addressed it in Bastias, but they were in a different position from this Court because they had already deferred to the Board's decision. So — so that's maybe not as helpful to this Court. But the Fourth and the Fifth Circuits did look with new eyes post-Loper-Bright at this definition, and they determined, and they very helpfully distilled it all down to three pretty easy elements here for a crime of child abuse, child neglect, and child abandonment. And they said that what we need is a level of culpable — of a culpable mindset, so a culpable mens rea. We need an act that either causes harm to the child or causes a like — or causes a reasonable probability of harm to the child. So the Fourth and the Fifth Circuits are not requiring as an element of the offense that harm actually occurs, just a reasonable probability that harm will likely occur. And, of course, that makes a lot of sense considering that it's not just a child abuse statute. It's child abuse, child neglect, and child abandonment. So when you have something like neglect, neglect does not always — it creates a situation where it's a reasonable probability that harm could result to a child who's neglected, but it's not always the case that harm occurs. Yes? This is next, I'm sure, but walk me through how the Indiana statute satisfies what it would take to be the second element of the Fourth Circuit's test. Okay. So just that the act causes a reasonable probability of harm? Right. So we have somebody who has to actually cause to come into existence an incident or performance, something that includes sexual conduct by a child. And the way that Indiana defines sexual conduct by a child is a pretty high bar. It either has to be actual sexual conduct, like as we understand sexual conduct involving actual — a type of actual sex, or if it is just a nude image, it can't just be a nude image of a child that's used by someone for sexual gratification. There has to be some evidence that it's for sexual gratification based on the image. So it can't just be a close-up photo of a child's genitals. It has to be something that indicates that it's for the purpose of sexual gratification of someone. What you're getting at is the underlying creation. Yes. And the problem is the Indiana statute allows a picture of that to qualify. I mean, I guess I would say that — oh, sorry, go ahead. I think you need to explain why taking a picture of a picture without dissemination, the requirement of dissemination, it creates that potential of harm for a child. Well, the Supreme Court has said that the distribution, the continuation of creating these sorts of images of a child is a continuing harm. And this Court actually in Wynn, which was brought up earlier, even said that itself. It said it's a heinous crime that causes damage to a child's mental well-being. But that's the dissemination. The Indiana statute doesn't require dissemination. It doesn't require dissemination. But it does require that a child's sexual performance is repeated. And saving it is not enough. Had she saved it on her hard drive, taken the same photo and saved it on her hard drive, there wouldn't have been a conviction based on her testimony about why she was convicted. So — but there wouldn't have been a conviction had she just saved it. She had to actually take another picture. It had to be a separate creation of a separate pornographic material in order for that to count. So when you have, as a child who has been harmed by one person's exploitation of them in creating this, again, it's a continuing harm that then they're again subjected to this level of exploitation where their sexual conduct or, you know, an image depicting them in sexual conduct has been then recreated. And, I mean, it seems almost like it should stand for itself that continuing that harm by creating more images, more images on more phones, more images on more places, like, you know, would extend the level of harm to the child. So — and at a minimum, I would say. I believe you're saying that the creation of the image itself causes harm. Yes. You're not even having to rely on your view on reasonable probability. You're saying there is harm. That's what I was going to get to. At the very least, we have a reasonable probability that this is going to damage a child's mental well-being, that they would be damaged emotionally by the recreation of their sexual conduct. I see. Does the Indiana statute require any sort of harm of that nature? You may say that's not relevant, but I'm wondering if that's the case. It does not — it does not state that it must cause harm. I mean, I think that the reason it was created was because there's an understanding that this kind of child exploitation causes harm, but it doesn't say that — I mean, it doesn't say that — and it's a difficult thing when we're talking about mental harm or emotional harm because it's not as easy as a physical harm where you can include an injury element in an offense. But what would a child have to do to prove beyond a reasonable doubt that they have been mentally harmed by somebody doing this? But there's a reasonable probability, based on this Court's case law talking about these sorts of images, the Supreme Court's case law talking about these sorts of images, that there's a reasonable probability that somebody is going — that a child will be mentally harmed by this sort of conduct. Does the reasonable probability, does that come from the Fourth Circuit's definition? So it started in a matter of sorum. That is the definition that the Board has been using, and the circuits that deferred to that definition comes from the 2nd, 3rd, 5th, 9th, 10th, and 11th, deferred to that. Let me ask you. Yes. If someone was charged with speeding in a school zone. Right. Is that child abuse? I mean — The reasonable probability that a child could get injured. That's sort of a hypothetical that's very far away from, like, the reasonable probability that someone will be harmed. Right. That's why I sort of thought that definition was pretty broad. But, I mean, well, is the — is the speeding in that area necessarily tied to — Because you need, as an element of this offense, too, that it is conduct to a child. So there would have to be some sort of a relationship between the conduct and the child as an element of the offense. I mean, I suppose if it were reckless driving in an area where everybody knows there are children walking across the street back and forth after school, you might argue that it's directed toward the children, at least recklessly. I think that's a closer case, though. I don't think that the level of probability there is quite on the level of probability of creating child porn. I would just mention quickly that the definition that Petitioners espoused for the definition of child abuse, child neglect, and child abandonment, which should be seen as one term based on the way it's written in the statute. But the definition that they advocate for is cruelty to a child that harms the child's physical, mental, or moral well-being. And this statute even meets that definition. So creating images of children engaging in sexual conduct harms them, or is cruel, because it denies their humanity and it exploits them, and it's — and it can harm their mental well-being. I'm going to quickly turn to the particularly serious crime. So when we — Can we talk — I think you totally skipped over sexual abuse of a minor. I did, just because I thought that — do you have questions about that? Yes. Okay. We've already held that simple possession of child pornography doesn't qualify, right? Right. Yes. So how is this any different, taking a picture of a picture? How is that any different than simple possession? It uses the child. Because your decision in Wynne, it hinged on the idea that the child — that there wasn't an act directed toward the child there. Here, there cannot be an image of a child engaging in sexual conduct — like, there can't be an image without using that child in that image. So you have the use aspect. That's true of the simple possession, too. I mean, I think that's probably what we argued, but we probably — Well, I thought the point was that the court claimed in that case that it wasn't directed toward the child. Right. That's what I'm saying. So by definition, it wasn't directed toward the child in that case. In that case, but in this case — But you're saying it's different when you create it than when you simply possess something that's already been created. And in that case, there's actually that specific carve-out. That's what this court said, is, well, maybe if we're talking about creating child porn, well, then we would be talking about something different, but this is just possession. That's what the court said. So that distinction — Yeah, I think the court said the statute might cover production. So it left that open. It did. Yeah. So it's certainly not for closing. I would agree that the easier path is to say that there's a reasonable probability of harm. But, yes, I do think that there's an element of use of a child when you are using them in that image. There is a more direct link, and that was the problem in Wynn. The using in the image is the clicking of the new photo? Is that what you're specifically talking about? Well, it's the creating of a new photo. Right, right. Clicking your camera and creating a digital image of another image. Yeah. I mean, I think that most children would feel as though more people having this image, more images of this conduct existing, is a harm. It's not necessarily more people having it here. It's another copy of the image. Right. More images is a continuation of that original abuse. Just on the immigration law, I believe you're saying, though, that removability is satisfied by either one of these? Yes. Yes. You do not need both. Just one. If the court were to conclude that the board was correct on either one, that would satisfy removability? Yes. And then you'd move to particularly serious crime? Yes. Yes. And I just would like to say, I'm sort of running low on time, so I'll be quick on particularly serious crime. So when we were looking at removability, the government had the burden to prove that. Petitioner had the burden to prove that she was eligible for relief. So she had the burden to prove that she was not convicted of a particularly serious crime. Petitioner states that the agency did not look at the elements of her offense first. The agency did. First, it says that the board says twice in both the denial of reconsideration and the original denial of the appeal, the board says this is an aggravated felony, and it carried more than a one-year sentence. So for asylum purposes, not for withholding, but for asylum purposes, it's a per se. So once you know that this is, that the elements make it an aggravated felony, then you know that they've looked at the elements. But in addition to that, the immigration judge, as was upheld by the board, did go through the elements of the offense and said this is a crime against persons, it's not a property crime, so we're going closer to the ambit of a particularly serious crime. It's a crime that involves sexual abuse of a child, also something that we've seen as a particularly serious crime. And it cited its own precedent in matter of RAM, where they found that mere possession of child pornography was a particularly serious crime. And in that case, even the defendant had less than a year's sentence, whereas she was sentenced to four years with two years suspended. And is there no definition of particularly serious crime? There is a definition. So the definition, so particularly serious means that it has to be beyond, it is a loose definition. And this Court has deferred to it in Mumad. But this is a definition developed by the board?  Not in the statute? No. I'm out of time. But this Court has deferred to it in Mumad, which is cited in our brief. All right. So you say as a matter of statutory stare decisis, that's still the governing definition? Yes. Yes. And in that case, also, I'm out of time. Do you want me to go through? Well, just finish that last thought. All right. So also in Mumad, it agreed with the Ninth Circuit saying that the nature, that the elements of the particularly serious crime is what makes someone, makes the dangerousness finding. So there doesn't have to be a separate dangerousness finding. If the crime is a particularly serious crime, then it makes a person dangerous. That's, they said, this Court said that it agreed with the Ninth that the, that makes it a particularly serious crime is modifying what came before it, but that being convicted of a particularly serious crime is what makes you dangerous. Okay. I'm out of time. Thank you very much.  Thank you for your argument. Ms. Isworth, we'll hear rebuttal. Thank you, Your Honor. Just a few quick points on rebuttal. First, this case does need to decide the sexual abuse of a minor ground as well, even if it decides on the child abuse ground, because sexual abuse of a minor is an aggravated felony, which is a per se bar to withholding, or excuse me, a per se bar to asylum. And so this Court does need to decide that issue. I just want to clarify that. Second, this Indiana statute is not a production statute. It's not a statute that requires original creation of an image. And therefore, it does not require use of a minor or an act directed at a minor. As regards to the child abuse ground, it is relevant. Run that by me again. What is the minimum conduct that's required under the Indiana statute as you see it? It is taking a photo of an already existing photo that includes an image depicting sexual conduct by a child. So the petitioner here did the minimum necessary for the crime. I mean, it's a categorical analysis, but this is the least culpable defendant possible under the statute? Yes, Your Honor. Quickly, it is relevant contrary to what the government states that the Indiana statute does not have an element of harm or of endangerment. And Your Honor's example about speeding was a perfect example of why this is important. And lastly, the government does not seek to defend the agency's inability to identify dangerousness in a particularly serious crime bar, and this is an independent error that requires remand. And with that, for all these reasons, we ask that the Court grant the petition. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The Court will file a decision in due course.